**Cite as:  Opinion No. 95-012 (May 10, 1995) (unpublished)**


**BI-COUNTY AGENCIES ) WASHINGTON SUBURBAN SANITARY COMMISSION ) BONDS ) ISSUANCE OF WATER SUPPLY BONDS ) USE OF BOND FUND SURPLUS**


May 10, 1995


*The Honorable Anne MacKinnon*
*Chairwoman*
*Prince George's County Council*

You have requested our opinion on two questions concerning financing activities by the Washington Suburban Sanitary Commission:

1.      Must the WSSC obtain approval from the General Assembly to issue water supply bonds?

2.      May the WSSC use certain surplus revenues that are deposited in a debt service fund to defray costs associated with new water and sewer construction projects?

For the reasons stated below, we conclude as follows:

1.      The WSSC may issue bonds without approval from the General Assembly if the amount of the bonds remains within limits established by statute.

2.      The WSSC may use the surplus revenues in question to defray costs associated with new water and sewer construction projects.

# I

## Bond Issuance ) Legislative Approval

In a prior letter of advice, Assistant Attorney General Kathryn M. Rowe expressed the view that "the WSSC does not need legislative approval for bond issues if the bond issue will not exceed the limits set by [Article 29,] §4-101 [of the Maryland Code].  However, if the WSSC wishes to exceed that limit, a separate authorization is necessary."  Letter to Delegate Michael R. Gordon, at 2 (October 27, 1994).[1]  For the reasons stated in Ms. Rowe's letter, a copy of which is attached, we concur with this conclusion.

# II

## Surplus Fees

Your second question relates to the use of money in an account called "the Current Bond Fund" or "the General Bond Debt Service Fund" (the "Fund").  "From time to time," you point out, "the WSSC determines that the [Fund] contains a surplus....  The County Council would like to know if these surplus funds may be expended by the WSSC for new water and sewer construction projects ...."

Article 29, §4-107 establishes the Fund, comprising "[a]ll sums collected by the WSSC for benefits levied against property for water supply and sewerage construction as provided in §5-101 of this article ...."  These sums are called "front foot benefit charges."  *See* Article 29, §5-102.  The Fund also contains revenue from service connection charges.  Under Article 29, §6-101(b), the WSSC is to retain one-half of this revenue in a contingency fund for maintenance and operation costs and to "[a]pply one-half of the revenue to pay the bonded debt of the WSSC."  The latter revenue goes into the Fund.  The Fund is augmented by the investment earnings on these sources of revenue.

The Fund is to be used to pay interest on outstanding bonds and to contribute to the "sinking fund" account needed to pay the principal of the bonds.[2]  These are the only uses of the Fund specified in §4-107.

As we understand your letter, at times the WSSC determines that the amount in the Fund is greater than is necessary for these purposes.  As you point out, this surplus typically results from refinancing of outstanding bonds at lower interest rates.

---

[1] With certain exclusions, Article 29, §4-101(a) provides that "the aggregate amount of bonds heretofore or hereafter issued under this section which may be outstanding at any time, less the amount held in the joint sinking fund account for the payment of the principal of the bonds, shall not exceed 14 percent of the total assessable basis of all property assessed for county taxation purposes within the sanitary district ...."

[2] If the Fund is insufficient for these purposes, the gap is filled by a tax levy.  *See* Article 29, §4-105.

When the WSSC achieves savings and debt service costs by issuing "refunding bonds," it has broad authority to use the savings in a way that benefits rate payers: "The WSSC shall make adequate provision for extending to the rate payers of the WSSC the benefit of savings in debt service cost derived through the issuance of any refunding bonds hereunder." Article 29, §4-109(d).

If the WSSC enjoys a surplus in the Fund because it has succeeded in lowering its debt service cost through refinancing, its use of the surplus to pay for water and sewer construction projects can reasonably be said to benefit the rate payers of the WSSC. If the cost of these projects is paid in part from the surplus, to that extent rate payers will be spared the future rate burden of longer term financing.

## III

## Conclusion

In summary, it is our opinion that:

1.    The WSSC may issue bonds without approval from the General Assembly if the amount of the bonds remains within limits established by statute.

2.    The WSSC may use the Bond Fund revenues to pay costs associated with new water and sewer construction projects.

J. Joseph Curran, Jr.
*Attorney General*

Jack Schwartz
*Chief Counsel*
 *Opinions & Advice*